E-filing

1  GARY BLACK,
   HOLLI BLACK
2  101 Auld Court
   Green Valley Falls, California 94534
3  Telephone (707) 373-2960

4  Plaintiffs are acting:
   *"In Propria Persona"*
5

FILED

MAY 2 8 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6

7               ## UNITED STATES DISTRICT COURT

8                              for the

9               ## NORTHERN DISTRICT OF CALIFORNIA

10

11  GARY BLACK, individually d/b/a Cal Bay

12  Construction and,

    C10-02381    A D R
                 M E J

    Case No. : _____

13  HOLLI BEAM-BLACK, individually d/b/a Castle

    Roofing

14

                Plaintiffs,
15
        **vs.**
16
                                        COMPLAINT FOR DAMAGES,
    GOOGLE, INCORPORATED et al;          REQUEST FOR JUDICIAL NOTICE,
17                                        PERMANENT INJUNCTIVE, AND
    and                                  OTHER EQUITABLE RELIEF
18
    Does 1 through 100 inclusive,

                Defendants.
                                    /

                         **INTRODUCTION**

    1.) The foregoing complaint arises from an online comment posted upon the Google web

    site located at http://www.google.com; attached hereto as exhibit 'A'.  The Plaintiff alleges that

    the Defendant, Google, Inc., chose to sponsor consumer-generated content in conjunction

26  with paid advertisements and on line business reviews in such a matter  that it has established

    an endorser sponsor relationship with the public at large.

27

28  2.) The Plaintiff alleges that the Defendant, Google, Inc. in fact allows so called '*courtesy*

                              1

Green Valley Falls, California 94534
101 Auld Court
and Holli Black

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

*advertising'* of the Plaintiff's businesses to be placed on it's web site without the Plaintiff's permission while exaggerating the benefits of a free product to the public at large and fails to disclose to businesses a material relationship where one exists between the public at large and the Plaintiff's business. Plaintiffs herein allege that these acts combine to constitute a violation of law under Title 15 USC 45 - Sec. 45 (a)(1)(2). and Title 15 USC 53 (a)(b).

3.) By the Defendant, Google, Inc., employing said means of marketing the *'courtesy advertising'* for the Plaintiff's businesses the Plaintiffs are harmed by assuming a risk of product and services being misrepresented and the potential liability that accompanies said risk. Specifically, for more than the past six months, an on line comment upon the Defendant's web site effectually devastates the plaintiffs income producing small businesses and it's reputation. Following is the text of the original on line comment posted on the Defendant, Google, Inc.'s, courtesy advertising web site for business reviews. The comment was made anonymously on or about October 20, 2009 defaming the Plaintiffs businesses:

"Having had my roof re-roofed by Cal Bay Construction which is now Castle Roofing & Construction, and then finding that they did such a poor job and my roof leaked from the beginning of rains in 2008, they still have not repaired my roof and it still leaks after a year and a half. They say they will fix it but changing names from Cal bay Construction to Caslte Roofing & Construction should have tipped me off that I may never get my roof repaired. This company says it will fix my roof but all I get is excuses. After 18 months you would think they would fix it. Cal Bay Construction may no longer exist but the new company Castle Roofing & Construction as the new entity needs to come out and fix my roof. I find this to be totally unsatisfactory work and would not recommend this company (Caslte Roofing & Construction) to anyone. They just do not know how to fix a bad roof job."

## PLAINTIFFS

4.) The plaintiffs are land based businesses and derive profits from direct sales rather than advertising on line. Plaintiffs are sole proprietorships d/b/a Cal Bay Construction and Castle Roofing with their principle place of business at 1440 Military West; suite #104;

1  Benicia, California 94510.

2      5.) The Plaintiffs are licensed California contractors representing themselves in the

3  instant matter *"In Propria Persona"*. Plaintiffs are acting on their own behalf and not

4  appointed or under the employ of others. The Plaintiffs are both U.S. Citizens living and doing

5  business within the Northern Judicial District Of California and request the Courts permission

6
7  to proceed with this case *"In Propria Persona"* or in the alternative have the case moved to

8  Governmental supervision.

9                                      **DEFENDANTS**

10     6.) The Defendant, Google, Inc. is headquartered in Santa Clara County at 1600

11 Amphitheatre Parkway; Mountain View, CA 94043. The Defendant, Google, Inc., transacts or

12 has transacted business in this District and throughout the United States. At all times material

13 to this Complaint, acting alone or in concert with others, Google, Inc. has advertised,

14 marketed, distributed, or sold advertising within this district and nation wide.

15

16                                **JURISDICTION AND VENUE**

17     7.) This Court has jurisdiction pursuant to Title 28 U.S.C. § 133 1. The district courts

18 shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

19 treaties of the United States.

20     8.) This Court has jurisdiction pursuant to Title 28 USC §1337 (a). Commerce

21 and antitrust regulations. The district courts shall have original jurisdiction of any civil action

22
23 or proceeding arising under any Act of Congress regulating commerce or protecting trade and

24 commerce against restraints and monopolies.

25     9.) This Court has jurisdiction and may prohibit unlawfulness and unfair business

26 practices pursuant to Title 15 USC 45 - Sec. 45 (a)(1)(2).

27     10.) This Court has jurisdiction and may prohibit false advertisements; and issue

28 injunctions and restraining orders pursuant to Title 15 USC 53 (a)(b).

11.) Venue is proper in this District under 28 USC § 53 (b).

12.) Defendant, Google, Inc.  conducts business makes financial transactions or has transacted business in this district and throughout the United States. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce as defined in Section 4 of the FTC Act. 2.

### PUBLIC INTEREST & REQUEST FOR JUDICIAL NOTICE

13.) The substance matter of this complaint wishes to help make the Internet a safer place for professionals and businesses by bringing into focus an understanding of the sponsoring responsibly, if any, that the Defendant, Google, Inc., should bear.

14.) Judicial notice is requested to the fact that people may have complaints against a professional or business that lack merit.

15.) The Plaintiffs have investigated various web sites that sponsor *'courtesy advertising'* and on line business review programming for businesses and professions and allege that it's against law under Title 15 USC 45 - Sec. 45 (a)(1)(2), Title 15 USC 53 (a)(b), and 18 USC 1365 - Sec. 1365(b), when an Internet business knows it's on line programming will do harm to others and/or advertises another parties business or profession while allowing competitor advertising and consumer generated content to accompany the advertising without the business's or professional's knowledge.

### DEFENDANTS' BUSINESS ACTIVITIES

16.) Since at least October 2009, Defendant, Google, Inc. has conducted a nationwide on line advertising campaign and on line business review scheme to sell advertising to local businesses for financial gain and profit; purportedly for the benefit of it's on line community of paid advertisers and others, as well as, individuals who may be seeking background information pertaining to potential business transaction or professional engagement on line. More specifically, in this case, many individuals regularly are using the Defendant's on line

Business Reviews, referred to herein as *'courtesy advertising'*, to check on a contractor before making a purchase or in many cases before even allowing the contractor to visit the prospective customer; thereby placing themselves within the contractors bid and the prospective customers decision making process.

17.) The Plaintiff alleges, the Defendant, Google, Inc., derives advertising revenue as a instant and direct result of the plaintiff's direct telemarketing and door-to-door selling efforts rather than from Defendant's own efforts. The Defendant accomplishes this by allowing what is referred herein as *"courtesy advertising"* on their business review web site which is posted publicly on line at http://www.google.com. Everyday the Plaintiff prospects door-to-door, canvasses door-to-door, or sends out mailings he/she produces traffic to the Defendants, Google, Inc.'s web site. Plaintiffs prospects are then able to view an ever changing advertisement sponsored upon the Defendant's web site along with other companies offering the same or similar services. Plaintiff alleges that these acts by the Defendants combine as a major market force *intervention* that is wrongful in that the Plaintiff's prospects are faced with advertising which is misrepresentative, ever changing, 24/7, and very difficult and costly for Plaintiff to adjust when incorrect, illegal, or improper information is being disseminated.

18.) Any member of the general public or the Defendant, Google, Inc., may post a businesses name, address, and phone number upon the Defendant's web site then defame anonymously in review of that business. Said public postings are then easily referenced by the general public by way of a home page search on the Defendant's search engine front page. Said practice of on line public reviews may be malicious with regards to persons or parties taking revenge on line rather than seeking justice or administrative remedies; (Reference is made to ¶ 13 - 14 - 15 PUBLIC INTEREST & JUDICIAL NOTICE) .

19.) The defamatory business review of Plaintiff's business (¶ 1) is anonymous and unverifiable as to the comments accuracy. In the instant matter, the Plaintiff alleges that said

comment was posted on the Defendant, Google, Inc.'s, web site against law as it's without any due process or administrative action and the Defendant, Google, Inc., has not contacted the Plaintiff after repeated attempts by the plaintiff to remedy the on line public comment. The Plaintiff has essentially been ignored by the Defendant; not even a return e-mail.

20.) The Plaintiffs prospect roofing sales using direct selling methods allowed by law; they include telemarketing, direct mail, and canvassing door-to-door. The Defendant Google, Inc. thereafter ambushes and blindsides the plaintiff's business with an on line advertising scheme, referred to herein as "courtesy advertising', while wrongfully benefiting financially on nearly a daily basis from Plaintiff's sales efforts. The Defendant, Google, Inc. benefits financially because prospective clients inquire on line of the Plaintiff's businesses at the Defendant's web site where the prospect is then bombarded by paid advertising from other roofing companies in competition with Plaintiff's business. The Defendant's policy of ignoring the content and nature of the negative anonymous review at issue within this complaint does harm to the Plaintiff in that the negative review sways the Plaintiffs' prospect toward those businesses who have paid the Defendant, Google, Inc., for advertising alongside the 'courtesy advertisement' of Plaintiff's businesses. Once the Plaintiff has spent hard efforts to locate a prospect and identified a need for a prospective customer that otherwise may not have been noticed by a prospective customer the customer is swayed away from the Plaintiff by false statements and misrepresentations by way of consumer generated content on the Defendant, Google, Inc.'s, web site. The plaintiff has tried on several occasions to remove itself from the Defendant's web site without success.

21.) The Defendant, Google, Inc.'s business review programming list on line for public viewing business names, addresses, and phone numbers. The *courtesy advertising'* of the Plaintiff's business has programming links which provide that the Plaintiff may click a link to *'take ownership'* of the advertising, verify the address and phone numbers, and even

suspend the 'courtesy advertising' by telephone or mail. The public nor the business owner may remove someone's comment or paid advertisements which are in conjunction with the Plaintiffs so called *'courtesy advertisement'*, rather this can only be done by the Defendant, Google, Inc. or the party making the comment. Additionally, the public can not suspend or delete the *'courtesy advertising'* or business listing from the Defendant's web site. The problem is that a visitor did in this case post an anonymous defamatory comment against the Plaintiff's businesses while the entire system of programming assumes a small *land based* business such as the Plaintiff's business is familiar with the Internet, has a computer, and knows his or her profession or business is being damaged by an ever changing advertisement. The Plaintiff contends the Defendant, Google, Inc., is by force, albeit market force, causing Plaintiff's business to constantly monitor and look over it's shoulder so as not to be ambushed by unknown Internet sources and that the practice of forcing small *land based* businesses to become Internet savvy constitutes an unfair business practice. In this case it's an anonymous and defamatory comment destroying a large portion of the Plaintiff's business while the Defendant benefits financially selling advertising to the Plaintiff's competition.

22.) The defendant, Google, Inc., has refused on multiple occasions throughout the past six months to remove, mediate, or even acknowledge damaging advertising directed at the Plaintiffs businesses.

23.) Plaintiffs have repeatedly tried using the Google, Inc. web site to remove not only the comments but also the advertised business listing in it's entirety from the Google, Inc. web site. In short, the defendant Google, Inc. has held itself out by way of it's programming as a deciding factor in the plaintiff's bidding process and ignored plaintiff's requests for a fair or reasonable dispute/resolution process while in violation of Federal and State law. The Plaintiff herein in the interest of expediency and respect for the Courts time only details the highlights of the Plaintiff's efforts within this original complaint. Following are perhaps thirty percent of Plaintiff's pleadings to the

1  Defendant Google, Inc. detailed below.

2       24.) November 8th, 2009 excerpt of Plaintiff's first response sent to Google,

3  Inc. via Google, Inc.'s abuse report system which is built into their business review

4  programming on Google's web site:

5       ". . . The defamation within the posting is anonymous, hiding behind Googles, Yahoo, and others. It

6       reads more true as a defamation and a complaint; a customer claiming my roof is leaking and they say

7       they'll fix it but don't know how and that they should fix it.

8            How is it possible to have an anonymous complaint with a roof leaking, presumably causing

9       emanate damage and possible bodily harm to someone's person or home and at the same time not be

10      able to find out who is in trouble. Goggles and Yoyo both refuse to reveal the identity of the posting or

11      give any detail.

12           In California were I did business up until last year an insurance company stands with there hand out

13      holding $12,500.00 in deposit to guarantee the performance of my work, even if I'm dead.

14           The party complaining and defaming my good company name obviously can not or did not make a

15      complaint with the CSLB, Cal-Bay Construction, or the Insurance Company. They've instead chosen an

16      incredible technology for anonymous revenge.

17           My first reaction here is I worked twenty five years, maintained a great reputation, and retired to

18      only have my career finish with an anonymous defamation posted here for millions to see indefinitely.

19           My second reaction is that Googles and Yahoo both ignore and refuse repeated request to

20      validate the anonymous roofing complaint, even though the party is screaming for help and the

21      company reputation is being destroyed. . ."

22  Google, Inc.'s abuse report system nor Google's employees had a response to Plaintiff's *first*

23  *response'*.

24       25.) On or about November 8th, 2009, was Plaintiff's second correspondence. Plaintiffs

25  used the Defendant's business listings web site again in an effort to dispose of the on line

26  defamation and complaint. The Defendant, Google, Inc. provides that a business is able to

27  *'claim ownership'* of Google's on line *'Courtesy Advertisement'*. So the plaintiff did as

28  instructed and claimed ownership of the *courtesy* business listing on the Defendant's Google

1  web site using an e-mail ID of hollibeam@yahoo.com, which is required by Defendant's
2  programming. Now as owner of the on line *'Courtesy'* business listing, Plaintiff was offered a
3  way to opt out of the on line business listing by mail. Via Defendant Googles programming the
4  plaintiff tried to opt out of Google's on line courtesy advertising. Google sent via US Mail a
5  post card containing a pin number so that the Plaintiff, as business owner, could enter the pin
6  number and suspend the business listings in their entirety on line. Plaintiff re-entered the
7  Defendant's on line program, logged in as hollibeam@yahoo.com, and entered the pin
8  numbers received from the Defendant's US MAIL to suspend the business listings so that they
9  would not appear on line. Immediately a web page appeared acknowledging the suspension of
10 the business listings. The pin number by US Mail and suspension process took approximately
11 two - three weeks. After the listings were suspended the Plaintiff discovered by word of mouth
12 from a prospective customer, while on sales calls, that Plaintiff had a problem advertisement
13 on line. The Plaintiff then checked on line to discover that the defamatory comments and
14 business listings were again visible to the general public via Defendant Googles on line
15 courtesy advertising program.

16     26.) During the months of January through April the Plaintiffs reviewed, on line, the
17 problems surrounding on line defamation and legal rights surrounding anonymous 1st
18 amendment rights while also having to answer to Yahhoo.com about the on line defamation,
19 as the defamatory comment (¶ 1) somehow migrated or was placed separately by someone
20 upon Yahoo's 'courtesy advertisement' for Plaintiff's businesses. The comment was precisely
21 the same defamatory comment as on the Defendants Google, Inc.'s web site. Yahoo's so called
22 *'courtesy business listing'* programming was similar to Google's except that Yahoo.com
23 responded to the Plaintiff each time the Plaintiff wrote to them and ultimately after several
24 attempts Yahoo.com did not remove the courtesy listing but did remove the defamatory
25 comments that were damaging the Plaintiff's business. Following is the Plaintiff's and
26 Yahoo.com e-mail exchange:

27     First e-mail To Yahoo from Plaintiff Gary G. Black:
28     Danielle Bluen,

I'm not sure who's the most stubborn, the online stalker, Holli, or Yahoo. She says she's <u>not</u> writing you a letter or intending to sue Yahoo. In short she thinks you're the devil and is afraid of you and others like you.

The rational:

1) The same posting is appearing to spread throughout the Internet.

2) Yahoo provides a platform enabling a person or competitor to seek <u>revenge rather than justice</u> without providing a method of resolution for small businesses.

3) Yahoo is hiding behind first amendment laws causing great damage to small businesses everywhere regardless of facts, government licensing, trade marking ...etc. etc..

4) Yahoo forces businesses to post phony reviews to mitigate bad reviews, as very few people will actually take time, without compensation, to promote a business they do not own and Yahoo is enabling and promoting this fraud to perpetuate a review process and advertising revenue.

5) Something about Yahoo not acting responsibly and different degrees of influence pertaining to on line defamation - Courts should intervene creating new law prohibiting large market influences such as Yahoo from destroying small mom and pop businesses when online postings come under dispute.

She assumes as I do that you're unaware of the identity or any facts surrounding the online posting. If you do have contact information please let her know, her cell is (707) 373-4615.

Castle Roofing generates daily business by way of telemarketing and canvassing door to door which reveals instantly and daily damages caused by your online posting. Commercial advertising such as T.V., radio, online ads are not in the business model.

Thank you though for investigating this matter.

(Holli's husband)

Another e-mail to Yahoo.com dated April 8th to Yahoo, under their report abusive content programming from Plaintiff Gary G. Black:

The above review of Castle Roofing is posted on your web site. Castle Roofing is owned by Holli Beam which has been in business for less than one year. Holli is requesting the post be removed as it violates Yahoo's policy against defamation of others or entities.

Castle Roofing customers have begun rescinding contracts and competitors have begun using copies of the online postings abusively to deprive Castle Roofing from winning bids for residential roofing.

This request is being made in good faith solely for the purpose of remedy and not for any improper purpose.

This request is directly and materially relevant to Castle Roofing's right to freely do business without being stalked 24/7 by a claimant weather the review in question is true or false.

Castle Roofing does not have sufficient information to contact the author of the review, establish or disprove the claims made, and defense against the allegations are unavailable from any other source.

Yahoo has remedy under the TOS agreement if it believes the rights of another person are being violated. In the instant matter the review is patently false but regardless of the reviews value it is most defamatory of Holli Beam and Castle Roofing.

Yahoo has the right under it's terms of service to remove defamatory content even if the nature of the content may be true but demonstrates cause for substantial damage to others.

Thank you for your cooperation.

Yahoo.com response E-mail to the Plaintiff Gary G. Black whereby Yahoo.com did remove the defamation from the so called *'Courtesy Business Listing'* :

Hello,

Thank you for writing to Yahoo! Local.

We're sorry, but the feature you are requesting is not available, and we

do not have an estimated date as to when or if it will be available. We

are always looking for ways to make Yahoo! Local more useful to our

users, and we will be sure to keep your comments in mind as we continue

to make improvements to our service.

Please let us know if you need any further assistance. Your patience is

greatly appreciated.

Thank you again for contacting Yahoo! Local.

1    Regards,

2    David Blake

3    Yahoo! Customer Care

4    27.) During the month of February the Plaintiffs sent an e-mail to the Defendant

5    Google, Inc. explaining that there had been no administrative actions regarding the on line

6    defamatory comment, no complaints at the Contractors State License Board, or any matching

7    criteria from any on going customer service. The Plaintiff inform the defendant that Plaintiff,

8    Holli Beam, owner of Castle Roofing had only been selling roofs for a little over a year, thus

9    making the on line comment false and that such a defamatory disclosure on line was illegal

10   because it lacked any previous administrative action or review and may be in the contractors

11   favor pursuant to the BUSINESS AND PROFESSIONS CODE SECTION 7090-7124.6 (c)

12

13          7124.6. (a) The registrar shall make available to members of the

14          public the date, nature, and status of all complaints on file against

15          a licensee that do either of the following:

16          (c) A complaint resolved in favor of the contractor shall not be

17          subject to disclosure.

18   The Plaintiff believed then that surely the Defendant Google, Inc. would at least respond to the

19   Plaintiff's concerns but never received any communication from the Defendant Google, Inc. at

20   all.

21   28.) On April 22, 2010 the Plaintiff was emotionally disturbed by the Defendants'

22   ignorance of the Plaintiff and mailed a very brash letter because the Plaintiff's businesses were

23   suffering financially on a daily basis from the on line defamation. The Plaintiff mailed a hard

24   copy letter to the Defendants' legal department via US Mail, addressed to the Defendant's

25   headquarters in Mountain View, California. Again the Plaintiffs never received a response

26   from the Defendant and the Defamation was still on line. The letter sent by Plaintiff reads as

27   follows:

28          First hand, you have my apologies if I sound brash. This letter is out of necessity and only

intended to resolve a small business problem expeditiously.

I've done business as Cal Bay Construction and other names going back to 1989 and never heard of your business review process until recently. I've been trying to retire for the past year or so and up until recently had a perfect track record.

Holli Beam owns Castle Roofing and relies heavily upon the good will and excellent reputation I built under the Cal Bay Construction name. She is now *administrator* over all the employees, staff, and bidding processes. She uses her own license and decided on the name Castle as it would be more <u>fanciful</u> should she decide to advertise as opposed to Cal Bay which is very generic in style.

Castle Roofing generates daily business by way of telemarketing and  door to door canvassing which <u>reveals instantly and daily damages caused by the online posting.</u> Commercial advertising such as T.V., radio, and online ads are not and have never been in the business model.

The posting at hand not only defames but is devastating to Holli's business and my own reputation. This week alone she has a $15,000, a $13,000 & two 9,000 deals on the table not counting others incoming throughout the week. The point is that these are not lunch tickets and <u>'apparently'</u> a minimum of one third of all clients using contractors check the contractors name on Google during or before the transaction takes place with the contractor. The defamatory commit on your web site is costing Holli as much as thirty thousand weekly in sales.

Below are some specifics you may wish to consider while deciding whether or not to  remove the defamatory content from your web site:

1.) Hopefully you can put yourself in the small shoes of a business that's losing thousands of dollars weekly because of <u>your questionable business practice</u>.

2.) Google is a global and powerful market influence. However, it's not proper to issue a fatal blow against small businesses on behalf of a single disgruntled person having an <u>anonymous</u> grudge that might not even be related to that business. For example it may be that my dog urinates on the neighbors property when their dog isn't looking or worse it could be an online stalker with a vengeance perhaps against a proprietor or a proprietors telemarketing practice.

3.) In the current business climate, it would not be in Googles best interest to be publicly known

as a powerful market influence (bully) shutting down thousands of small businesses across America.

4.) While Google may not be liable for the anonymous postings of others, it may be liable proportionately for the malicious damage caused by very bad oversight of the review process. Examples: a) Failure to accommodate and fairly evaluate both sides of an anonymous contractor dispute. b) Enabling a person or persons to exact meaningful revenge against a business whether they are in the right or in the wrong. c) An online stalker seeking revenge rather than a true and just remedy on Google's platform without Google providing a method of resolution is guaranteed to be a small business tragedy.

5.) There should be a fair dispute/resolution process if Google intends to hold itself out as the deciding factor in a contractor's bid.

6.) Google forces businesses to post phony reviews to mitigate bad reviews, as very few people will actually take time, without compensation, to promote a business they do not own and Google is enabling and promoting the fraud to perpetuate a review process and advertising revenue.

7.) Fraudulent and defamatory postings spread throughout the Internet and the brick and mortar community as they're copied from the Google web site.

8.) Google is not acting responsibly and with regard concerning different degrees of market influence pertaining to an on line defamation. Said ignorance is highly discriminatory towards small mom and pop businesses.

[The Courts should perhaps intervene in creating new case law prohibiting large market influences such as Google and Yahoo from destroying small mom and pop businesses when online postings come under dispute.]

9.) The posting violates Google's own terms of service (TOS) in that it defames and does great damage to a business on a 24/7 continuous basis. It's not like a bad day for a business but more like a death sentence for a small business whether the accusation is true or not.

_____

The same defamatory posting was placed on Yahoo under a different still anonymous user account and has recently been removed from Yahoo. For your convenience following is Yahoo's

reply after the removal of the defamatory comment:

From: Yahoo! Local <local-ratings@cc.yahoo-inc.com>

Date: Tue, April 13, 2010 6:24 pm

To: <gerald@raymondavich.com>

Hello,

Thank you for writing to Yahoo! Local.

We're sorry, but the feature you are requesting is not available, and we

do not have an estimated date as to when or if it will be available. We

are always looking for ways to make Yahoo! Local more useful to our

users, and we will be sure to keep your comments in mind as we continue

to make improvements to our service.

Please let us know if you need any further assistance. Your patience is

greatly appreciated.

Thank you again for contacting Yahoo! Local.

Regards,

David Blake

Yahoo! Customer Care

_____

The Google web site posting at issue is patently false, malicious, and defamatory with intent to

harm as can be easily evidenced.

Holli of Castle Roofing is urging me to make formal a complaint against Google for allowing the

defamation, trade mark infringement issues, abusive and ineffective business practices,

negligence, stalking, ...etc. along with a motion to expose the posting party in the next several

days.

I've tried talking her into a hard copy letter to Google first but she's getting high rates of people

canceling sales appointments after appointments have been set by canvassers and by telephone,

contract cancellations, and embarrassing personal inquiries.

Even though Cal Bay Construction no longer contracts, we still take calls for valid service on a

few thousand roofs. The posting adversely impacts Castle Roofing at the old Cal Bay location

where she (Castle Roofing) wants the posting removed from your web site on an ASAP basis.

Should you wish more information please feel free to contact me at anytime. My cell (707) 373-

2960. I'll give the matter a little more time, as I too would like it resolved -- rather than being a

party to litigation.

Thank you in advance for your valuable consideration.

Gary Black owner of Cal Bay Construction a/k/a Gerald Raymondavich

29.) On or about May 20th, 2010, again emotionally discouraged the Plaintiff exchanged e-mail with a Medical Doctor who is also a neighbor near the Plaintiff's residence. Following is an exchange whereby the Doctor labels such on line activities regarding the evaluation of professionals and businesses "scary". The plaintiff herein had directed the Doctors attention to a Doctor in San Francisco that was battling for her reputation from an anonymous on line posting about her child support which had nothing to do with her practicing medicine. Following is Plaintiff's e-mail exchange with the Plaintiffs' neighbor who is a doctor:

FROM THE PLAINTIFF, GARY BLACK on May 20th, 2010

Hello,

This abuse is happening to thousands all over the Internet. Unfortunately, they hide behind the first amendment right to free speech. It's very costly to file Federal complaints to get a Judge to authorize the tracing you speak of. One must prove that your rights as a business are more important or greater than the anonymous parties right to speak anonymously.

FROM THE PLAINTIFFS' NEIGHBOR WHO IS A DOCTOR on May 20th, 2010

"Wow,

i am not sure where to start. One thing that concerns me is the **system** used to rate professionals and businesses. I notice one rating system listed all docs in solano county and the opportunity for anyone to give a rating of a specific doctor. This is scary! Anyone, ie) neighbor can write anything. Of course this can be considered slander. . ."

30.) The Defendant, Google, Inc., at all times material to this Complaint acting alone or

in concert with others directed, controlled, and had the authority to control or participated in the acts and practices set forth in this complaint via software programming on their web site within the United States of America and in the State of California. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act. 2 Title 15 U.S.C. § 44.

31.) On or about May 10th, 2010 Plaintiff examined a business review site named Angie's List located at http://www.angieslist.com/angieslist/ . The Plaintiff was pleasantly surprised to find responsible business review practices. At Angies List all business and professional complaints anonymous or not are verified and investigated so that a business may make amends. Then the web site gives the complaining party an opportunity to re-rate the business positively.

32.) Plaintiffs herein are husband and wife with separate and distinct business licenses for contracting in the State of California. Both the Plaintiff's reputations, incomes, and businesses have been severely damaged by the on line programming and 'courtesy advertising' sponsored by Google, Inc. and others. In the current very tough business environment both Plaintiffs have suffered emotionally as a direct result of the Defendants acts detailed above. The Plaintiffs' wife, Plaintiff HOLLI BEAM-BLACK, especially has become distressed emotionally and sent the following e-mail to Plaintiff just a few weeks ago:

"... ready to leave "Dodge". Can we PLEASE just move ?! I'm so ready to get

out of this rat race. Let's sell the house, move to the midwest , I'll get a job and you

can do your hobbies. I'm really serious Gene. I'm done working my @#$@$ off and

having so much stress. I feel as tho I'm dying here."

Plaintiff, GARY GENE BLACK, also spouse explained that the Defendants, such as, GOOGLE, INC. are everywhere on a 24/7 basis, and that running away doesn't provide a remedy of the issue. Plaintiffs' wife Holli Beam - Black was unaware of the making of this complaint until just a few days before it's filing.

**CONCLUSION**

33.) Plaintiff alleges, that large market forces, such as the defendant Google, Inc., should not enable *'courtesy advertising'* that places business and professions at risk without written consent and disclosure of said risk from the parties being advertised. *'Courtesy Advertising'* allowing for public defamation or promotion of a business or professional, may as in this case, cause meaningful damage towards others, whether the consumer generated content is anonymous or not, whether pro or con, without a due process.

34.) Therefore the Plaintiffs herein allege the Defendants, Google, Inc.'s business review *'courtesy advertisement'* process which allows for consumer generated content is illegal and inappropriate as it manifest into allowing parties to seek revenge against businesses and professionals rather than due process and justice whereby no single business entity such as the Defendant, Google, Inc., would ever be capable of adjudicating the entire business complaint community.

35.) Plaintiff further alleges that the Defendants, Google, Inc., intentionally conspired to cause illegal acts. Throughout the on line *'courtesy advertising'* programming distributed to the public by the Defendant, Google, Inc., there exist options whereby the general public may report suspect content to the Defendant, Google, Inc.. The general public may select and report content that they believe to be abusive or illegal; Therefore one may conclude that the Defendant, Google, Inc. knew in advance that their programming was hostile, could and does cause harm by *enticing* members of the general public to commit illegal acts, which is now continuing on a business as usual basis. Plaintiff alleges that consumer-generated content added to and in conjunction with said on line *'courtesy advertising'* combine to be in violation of 18 USC 1365 - Sec. 1365(b): Tampering with consumer products, which reads as follows.

(b) Whoever, with intent to cause serious injury to the business of any person, taints any consumer product or renders materially false or misleading the labeling of, or container for, a consumer product, if such consumer product affects interstate or foreign commerce, shall be fined under this title or

18

1  imprisoned not more than three years, or both.

2

3                          **FIRST CAUSE OF ACTION**

4                       **Breach of Authority; Violation of Law**

5      36.) Plaintiff herein incorporates paragraphs one through thirty-five into this First

6  Cause Of Action.

7      37.) The Plaintiff alleges that the Defendant, Google, Inc., chose to sponsor

8  consumer-generated content in such a matter that it has established an endorser sponsor

9  relationship with the public at large.

10

11     38.) The Plaintiff alleges that the Defendant, Google, Inc. in fact allows so called

12  *'courtesy advertising'* of the Plaintiff's businesses to be placed on it's web site without the

13  Plaintiff's permission while exaggerating the benefits of a free product to the public at large

14  and  fails to disclose to businesses a material relationship where one exists between the public

15  at large and the Plaintiff's business. Plaintiffs herein allege that these acts combine to

16  constitute a violation of law under Title 15 U.S.C. § 45(a), prohibiting "unfair or deceptive acts

17  or practices in or affecting commerce." and Title 15 USC 53 (a)(b) and violations of the FTC

18  ACT 17. Section 5(a).

19

20     39.) By the Defendant, Google, Inc.,  employing said means of marketing *'courtesy*

21  *advertising'* for the Plaintiff's businesses the Plaintiffs are harmed by assuming a risk of

22  product and services being misrepresented and the potential liability that accompanies said

23  risk. Specifically,  for more than the past six months, an on line comment upon the

24  Defendant's web site effectually devastates the plaintiffs income producing small businesses

25  and it's reputation.

26     40.) The Plaintiffs have made every effort to dodge, answer, settle, or suspend

27  the on line defamation of their businesses and even tried labeling the business closed and

28  disconnecting the telephone number used in the on line advertising with the Defendant's

                                         19

programming without results.

41.) Plaintiff alleges the Defendant, Google, Inc.,  sponsors and publishes online business reviews for profit while at the same time neglecting the legal needs of said reviews thereby failing to meet jurisdictional and administrative requirements of the State of California and others. In the instant matter said defamatory disclosure on line is illegal pursuant to the BUSINESS AND PROFESSIONS CODE SECTION 7090-7124.6 (c) as there has not been an attempt by the Defendant, Google, Inc. or the claimant at an administrative or just due process resolution as required by § 7090-7124.6 (c) of the BUSINESS AND PROFESSIONS CODE which reads as follows:

> (c) A complaint resolved in favor of the contractor shall not be
>
> subject to disclosure.

42.) Plaintiff further alleges that the Defendants, Google, Inc., intentionally conspired to cause illegal acts. Throughout the on line 'courtesy advertising' program distributed to the public by the Defendant, Google, Inc., there exist options whereby the general public may report suspect content to the Defendant, Google, Inc.. The general public may select and report content that they believe to be abusive or illegal; Therefore one may conclude that the Defendant, Google, Inc. knew in advance that their programming was hostile, could and does cause harm by enticing members of the general public to commit illegal acts which are now continuing on a business as usual basis. Plaintiff alleges these acts combined are in violation of 18 USC 1365 - Sec. 1365(b): Tampering with consumer products, which reads as follows.

> (b) Whoever, with intent to cause serious injury to the business of any person, taints any
>
> consumer product or renders materially false or misleading the labeling of, or container for, a
>
> consumer product, if such consumer product affects interstate or foreign commerce, shall be
>
> fined under this title or imprisoned not more than three years, or both.

## SECOND CAUSE OF ACTION

### Breach of Contract

43.) Plaintiff herein incorporates paragraphs one through forty-two into this Second

1  Cause Of Action and alleges that a contract exist between the Plaintiffs and Defendants via the

2  Defendant, Google, Inc.'s on line terms of service (TOS).

3      44.) The plaintiff alleges the Defendant, Google, Inc.,  was negligent and inflicted

4  injury intentionally upon the Plaintiffs by very bad oversight of the their business review

5  programming and breach of their terms of service (TOS) made public upon their web site and

6  said contract (¶43). Specifically, section three of Defendant's TOS copied from Defendant,

7  Google, Inc.'s web site, which reads as follows:

8      **3. Appropriate Conduct; Compliance with Law and Google Policies.** You agree that you are

9      responsible for your own conduct and content while using the Products, and for any consequences thereof.

10     You agree to use the Products only for purposes that are legal, proper and in accordance with the Terms

11     and any applicable policies or guidelines Google may make available. By way of example, and not as a

12     limitation, you agree that when using the Products or the Content, you will not:

13     (a) defame, abuse, harass, stalk, threaten or otherwise violate the legal rights (such as rights of privacy and

14     publicity) of others.

15     45.) The Plaintiffs allege they were damaged financially and emotionally by said

16  breach of contract.

17                          **THIRD CAUSE OF ACTION**

18                      **Unfair Business Practices/False Advertising**

19     46.) Plaintiff herein incorporates paragraphs one through forty-five into this Third

20  Cause Of Action and alleges that the Defendants, Google, Inc., and others are ambushing and

21  blindsiding the Plaintiff with on line advertising while wrongfully benefiting financially as a

22  result of the plaintiff's daily direct selling efforts. The plaintiff alleges that defendants et al,

23  should not benefit by the plaintiff's daily direct selling and prospecting efforts and that the

24  Plaintiffs are injured and damaged as a result of the Defendant, Google, Inc.'s on line business

25  review processes.

26     47.) The Plaintiff contends the Defendant, Google, Inc., is by force, albeit market

27  force, causing Plaintiff's business to constantly monitor and look over it's  shoulder so as not

28  to be ambushed by unknown Internet sources and that the practice of forcing small *land*

*based* businesses to become Internet savvy constitutes an unfair business practice. In this case it's an anonymous and defamatory comment destroying a large portion of the Plaintiff's business while the Defendant, Google, Inc., benefits financially selling advertising to the Plaintiff's competition while falsely advertising the Plaintiff's businesses in violation of law under Title 15 USC 45 - Sec. 45 (a)(1)(2). and Title 15 USC 53 (a)(b).

48.) The Plaintiff alleges that the Defendant, Google, Inc., chose to sponsor consumer-generated content in such a matter that it has established an endorser sponsor relationship with the public at large.

49.) The Plaintiff alleges that the Defendant, Google, Inc. in fact allows so called *'courtesy advertising'* of the Plaintiff's businesses to be placed on it's web site without the Plaintiff's permission while exaggerating the benefits of a free product to the public at large and failing to disclose to businesses a material relationship where one exists between the public at large and the Plaintiff's business. Plaintiffs herein allege that these acts combine to constitute a violation of law under Title 15 USC 45 - Sec. 45 (a)(1)(2). and Title 15 USC 53 (a)(b).

50.) By the Defendant, Google, Inc., employing said means of marketing *'courtesy advertising'* for the Plaintiff's businesses the Plaintiffs are harmed by assuming a risk of product and services being misrepresented and the potential liability that accompanies said risk. Specifically, for more than the past six months, an on line comment upon the Defendant's web site effectually devastates the plaintiffs income producing small businesses and it's reputation.

51.) Specifically, the plaintiff's sell residential roofing and generate daily business by way of telemarketing and canvassing door to door. Commercial advertising such as T.V., radio, and online ads are <u>not</u> in the plaintiff's business model. The plaintiff alleges that Plaintiffs' prospects and customers are wrongfully influenced, without the plaintiff's

1   permission, by the defendants failure to allow the plaintiffs to remove themselves from the on

2   line advertising process and further allege that Defendants, Google, Inc. allow others to

3   adversely influence the so called *'courtesy advertising'* without Plaintiff's knowledge or

4   permission. Therefore the Plaintiffs herein allege the business review *'courtesy advertisement'*

5   process which allows for consumer generated content is illegal and inappropriate as it

6   manifest into allowing parties to seek revenge against businesses and professionals rather

7   than due process and justice as no single business such as the Defendant, Google, Inc., would

8   ever be capable of adjudicating the entire business complaint community.

9         52.) Because of the plaintiff's direct marketing efforts, the public in general

10  frequently investigate on line as to the identity of the plaintiff's businesses.  If there are

11  negative business reviews online for public viewing the plaintiff's business suffers instant and

12  daily damages which are directly attributable to the negative online postings. On the other

13  hand, if there exist positive or no reviews of the plaintiff's business on line the plaintiff's

14  prospects are wrongfully subjected to competitors advertising against the plaintiff's wishes.

**FOURTH CAUSE OF ACTION**

**Negligence**

17        53.) Plaintiff herein incorporates paragraphs one through fifty-two into this Fourth

18  Cause Of Action and alleges that the Defendants, Google, Inc., acted negligently in handling the

19  on line business review 'Courtesy Advertising' processes and damaged the Plaintiffs financially

20  and emotionally as a direct result of their negligence.

21        54.) The plaintiff further alleges the Defendant, Google, Inc.,  was negligent and

22  inflicted injury intentionally upon the Plaintiffs by very bad oversight of the their business

23  review programming.

24        55.) The plaintiff further alleges the Defendant, Google, Inc.,  was negligent and

25  inflicted injury intentionally upon the Plaintiffs by ignorance of the Plaintiff's many notices to

26  the Defendant, Google, Inc. informing them that Plaintiff was being harmed illegally and was

27  suffering financially as a result thereof.

28

### FIFTH CAUSE OF ACTION

#### Misrepresentation

56.) Plaintiff herein incorporates paragraphs one through fifty-five into this Fifth Cause Of Action and alleges that the Defendants, Google, Inc., misrepresented the Plaintiff's businesses in that the implication to the general public within the Defendant's 'Courtesy Advertising' of Plaintiffs businesses was such that Plaintiff's roofing projects leak, thereby causing prospective consumers of Plaintiffs to purchase elsewhere.

57.) Specifically, the plaintiff alleges that Plaintiffs' prospects and customers are wrongfully influenced, without the plaintiff's permission, by the defendants failure to allow the plaintiffs to remove themselves from the on line advertising process or inhibiting said removal.

58.) Plaintiffs further allege that Defendants, Google, Inc. allow others (Consumer Generated input directly along side of the 24/7 on line advertising) to misrepresent the Plaintiff's business, avoid administrative due processes, and adversely influence the so called 'Courtesy Advertising' without Plaintiff's knowledge or permission. Therefore, the making of the representation as set forth in ¶1 of this complaint constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

59.) The Plaintiffs allege that they were completely blindsided by the current instance of misrepresentation and damaged as a result.

### SIXTH CAUSE OF ACTION

#### Intentional Infliction of Emotional Distress

60.) Plaintiff herein incorporates paragraphs one through fifty-nine into this Seventh Cause Of Action and alleges that the Defendants, Google, Inc., intentionally inflicted emotional distress upon the Plaintiffs by intentional negligence, inattentive business practices, violation of common decency, violation of law, and unfair business practices for the purpose of selling advertising rather than the purpose of free marketing of 'Courtesy Advertising' for businesses and professionals.

**THIS COURT'S POWER TO GRANT RELIEF**

61.) Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate.

**PRAYER FOR RELIEF**

62.) Wherefore, Plaintiffs, pursuant to Sections 13(b) of the FTC Act, 15 U.S.C. § 53(b) and the Court's own equitable powers, requests that the Court:

A.) Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of other consumer injuries during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions;

B. Enter a permanent injunction to prevent future violations of law by Defendants;

C. Award Plaintiffs actual damages in accordance with law;

D. Award Plaintiffs punitive damages in accordance with law;

E. Award Plaintiffs compensatory damages including reimbursement for lost wages and time in bringing this action;

F. Award Plaintiffs the costs and fees of bringing this action, as well as such other just and proper relief as the Court may determine.

Respectfully,

_____  5/28/2010
GARY BLACK, individually plaintiff

_____  5/28/10
HOLLI BEAM-BLACK, individually plaintiff